IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| CHRISTINE HAMILTON, as the personal representative of the Estate of Blair Shannon, deceased,<br><br>   Plaintiff,<br><br>v.<br><br>DOWSON HOLDING COMPANY, INC., d/b/a CARIB BEACH RESORT and BEST WESTERN INTERNATIONAL, INC.,<br><br>   Defendants.<br>_____<br><br>MONIQUE FAULKNER,<br><br>   Plaintiff,<br><br>v.<br><br>DOWSON HOLDING COMPANY, INC., d/b/a CARIB BEACH RESORT and BEST WESTERN INTERNATIONAL, INC.,<br><br>   Defendants.<br>_____ | )<br>)<br>)<br>)<br>)  CIVIL NO. 2008/02<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL NO. 2008/10<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Disqualify Plaintiffs' counsel,[1] Plaintiffs' opposition thereto and Defendants' reply.

---

[1] On February 26, 2009, Defendant, Best Western International, Inc., moved to join in Defendant, Dowson Holding Company, Inc.'s, Motion to Disqualify and the Court granted the motion on February 27, 2009.

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 2 of 18

## RELEVANT FACTS

On January 19, 2006, Mr. Blair Shannon was shot in his room at the Best Western Carib Beach Resort ("Carib Beach Resort") on St. Thomas, Virgin Islands and subsequently died of his injuries. On January 31, 2006, Attorney Charles S. Russell, Jr., of the law offices of Moore Dodson & Russell, P.C. ("the firm" or "Moore, Dodson & Russell"), the general counsel of Dowson Holding Co., Inc., ("Dowson" or "Defendant") contacted Dennis Sheraw, a private investigator, by telephone, about the possibility of hiring him to perform an investigation regarding the homicide of Blair Shannnon. On February 1, 2006,[2] Attorney Russell sent Mr. Sheraw a package of documents relevant to Mr. Shannon's murder. On February 7, 2006, Mr. Sheraw submitted to the firm a "Work Scope and Proposal" for the investigation and by letter dated March 10, 2006, Attorney Russell advised Mr. Sheraw that the portion of the scope of work regarding off-islands work would be outsourced and that Mr. Sheraw should provide a revised estimate for that portion of the scope of work that was not being outsourced.[3] By

---

[2] The February 1, 2006, letter reads as follows: "Dear Dennis: Per our conversation yesterday, I enclose notes and documents concerning an event we would like you to investigate since we reasonably anticipate that it will result in litigation. The client has requested a proposed scope of work and estimate for your services in this regard, but you would be retained as a consultant to this law firm. After reviewing this material, please give me a call." "ATTORNEY WORK PRODUCT PRIVILEGED" was written across the letter in capital letter.

[3] Attorney Russell further avers that after the transmittal of the documents on February 1, 2006, he had a subsequent telephone conversation with Mr. Sheraw "regarding the scope of the work of the investigation, [his] interpretation of the evidence, the terms of retention and the status of the matter." In support of their opposition to Defendants' Motion to Disqualify, Plaintiffs submitted a declaration of Dennis Sheraw. In his declaration, Mr. Sheraw declares to recalling a telephone conversation with Attorney Russell after the February 1, 2006, letter.

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 3 of 18

memorandum dated March 13, 2006, Mr. Sheraw provided a revised estimate addressed to Attorney Treston Moore. The March 13, 2006, memorandum was the last communication between Mr. Sheraw and Moore Dodson & Russell. Mr. Sheraw was not retained by the firm and did not again hear from the firm until December 1, 2008, when the firm made a request for return of the documents sent under a cover letter dated February 1, 2006. To date, Mr. Sheraw has not returned the documents.

On April 17, 2006, Attorney Thomas H. Hart III contacted Mr. Sheraw about the possibility of conducting an investigation regarding the death of Blair Shannon at the Best Western Carib Beach Resort. On April 20, 2006, Attorney Hart retained Mr. Sheraw to conduct the investigation. Attorney Hart, in a declaration submitted in support of Plaintiffs' opposition to Defendants' Motion to Disqualify, declares that when he contacted Mr. Sheraw to perform the investigative services on behalf of the Plaintiffs, Mr. Sheraw advised him that he had been previously contacted, but not retained, by Moore Dodson & Russell to act as an investigator on behalf of Caribe Best Western Hotel [sic]. (Attorney Hart's Declaration, paragraph 2). Attorney Hart further declares that in April 2006, he called the law offices of Moore Dodson & Russell and left a message for Attorney Moore advising him that he intended to use Mr. Sheraw as an investigator in the Blair Shannon murder, but that Attorney Moore did not return his call. (Attorney Hart's Declaration, paragraph 3). He further declares that on May 24, 2006, he again called the law offices of Moore, Dodson & Russell and left the same message and his calls were

---

( Declaration of Dennis Sheraw, paragraph 9).

not returned. (Attorney Hart's Declaration, paragraph 3). Attorney Hart declares that "[he] now understand[s] that Mr. Sheraw received documents from Dodson and Moore." (Attorney Hart's Declaration, paragraph 5). However, he further declares that Mr. Sheraw "did not provide . . . [him] with copies of any such documents and, to the best of . . . [his] knowledge, . . . [Mr. Sheraw] did not use such documents in the investigation he performed for . . . [him]." (Attorney Hart's Declaration, paragraph 5). Attorney Russell, in his affidavit dated December 18, 2008, avers that he did not receive any communication from Attorney Hart regarding Dennis Sheraw and/or his involvement in the case and does not recollect any telephone messages from Attorney Hart about Dennis Sheraw. (Attorney Russell's Affidavit, paragraph 5).

## DISCUSSION

Defendants move this Court to disqualify Plaintiffs' attorneys on the basis that Plaintiffs counsel hired an investigator that had been previously contacted by the Defendants to conduct an investigation and during the course of Defendants' involvement with the investigator, the investigator was privy to Defendants' counsel's work-product. Plaintiffs oppose the motion on the basis that the Defendants waived any privilege they may have had because they disclosed privileged information to Mr. Sheraw with whom they had not established a type of relationship to which a privilege attached.

In deciding this motion to disqualify, the Court must first establish what type of relationship, if any, was established between Moore Dodson & Russell and Mr. Sheraw. The facts establish that Moore Dodson & Russell contacted Mr. Sheraw about conducting an

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 5 of 18

investigation regarding Blair Shannon's homicide and that Attorney Russell sent a packet of documents with information related to the murder, including attorney work product documents, and requested that Mr. Sheraw prepare a scope of work and a cost estimate for the proposed investigation. Mr. Sheraw prepared a scope of work and was asked to revise it; Mr. Sheraw prepared and submitted a revised scope of work and cost estimate, but never heard from the firm. Mr. Sheraw was never retained by Moore Dodson and Russell; thus, a licensor/licensee relationship was never established between the firm and Mr. Sheraw and, therefore, a confidential relationship was never established as contemplated under title 23 Virgin Islands §1320.[4]

Although a licensor/licensee relationship was not established between Mr. Sheraw and the firm, the question becomes whether the firm's attorneys' work-product privilege was waived by the disclosure of work product documents to Mr. Sheraw in the absence of such a relationship. The attorney work product privilege protects against the invasion of an attorney's course of preparation. *Bogosian v. Gulf Oil Corporation,* 738 F.2d 587, 593 (3d. Cir. 1984) (quoting

---

[4] Title 23 Virgin Islands Code, § 1320 in pertinent part provides:

No licensee or any employee of such licensee shall divulge to any person, except as otherwise provided by law, other than to the principal or his employer any information acquired as a result of any investigation, surveillance, or other employment performed by such licensee or employee. Provided, however, that the provisions of this section shall not apply to any employer who is also the holder of a license issued pursuant to this chapter who has written consent of the client or the principal to divulge any information falling within the terms of this section, and further provided, that the provisions of this section will not apply to the taking of testimony or receiving of evidence in any judicial proceeding.

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 6 of 18

*Hickman v. Taylor* 329 U. S. 495, 512, 91 L. Ed. 451, 67 S.Ct. 385 (1947).  It covers "written materials obtained or prepared by an adversary's counsel with an eye toward litigation and it includes interviews, statements, memoranda, correspondence, briefs, mental impressions and personal beliefs." *Id.*  The work-product doctrine promotes the adversary system by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. *Westinghouse Electric Corporation v. The Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991)  (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S. Ct. 385, 91 L. Ed. 451 (1947); *United States v. AT&T*, 206 App. D.C. 317, 642 F.2d 1285, 1299 (D.C. 1980).  Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients. *Id*.  Because the work product doctrine serves to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine.  *Id.*   The purpose of the work-product doctrine is to protect information against opposing parties, rather than against all others outside a particular confidential relationship. *United States v. AT & T*, 206 App. D.C. 317, 642 F. 2d 1285, 1299 (D.C. Cir. 1980).  To waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information. *Westinghouse Electric Corporation v. The Republic of the Philippines* at 1428.  A disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining the secrecy against opponents, should be allowed without waiver of the privilege. *United States v. AT & T*  at 1299.

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 7 of 18

  Here, included in the packet sent to Mr. Sheraw were attorney work-product documents. These documents were disclosed to Mr. Sheraw, had he been retained, to assist in the investigation. However, the firm did not engage the services of Mr. Sheraw, but did not request the documents back, including the work-product documents. Nonetheless, the documents were given to Mr. Sheraw with the expectation that he would be assisting the firm through his investigation in preparation for anticipated litigation. The fact that the firm did not request the return of the documents when Mr. Sheraw was not retained, does not amount to, in this Court's opinion, actions inconsistent with maintaining the secrecy of the documents against the Plaintiffs. It would have been better practice had the firm requested the documents be returned after it decided not to use Mr. Sheraw' services, but that did not happen. Because the work-product privilege is not waived by the mere disclosure of these documents to a third-party, who is not an adversary, when they are disclosed to assist an attorney in preparation for anticipated litigation, the Court finds that the Defendants counsel did not waive the work-product privilege when they sent their documents to Mr. Sheraw to assist him with the investigation of Blair Shannon's murder.

  It is now necessary to address whether Attorneys Hart and Feuerstein should be disqualified from representing the Plaintiffs because Attorney Hart retained Mr. Sheraw when he had prior knowledge that Mr. Sheraw had been contacted by the Defendants regarding the same murder investigation. The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before the court.

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 8 of 18

*Richardson v. Hamilton International Corp.,* 469 F.2d 1382, 1385-86 (3d Cir. 1972), *cert denied* 411 U.S. 986 (1972). A motion to disqualify counsel requires the court to balance the right of a party to retain counsel of his choice and the substantial hardship which might result from the disqualification as against the public perception of and the public trust in the judicial system. *Powell v. Alabama*, 287 U.S. 45, 53 (1932). Disqualification issues must be decided on a case-by-case basis. *McKenzie Construction d/b/a Building Specialties v. St. Croix Storage Corporation*, 961 F. Supp. 857, 859 (3d Cir. 1997). The party seeking disqualification bears the burden of showing that continued representation would be impermissible. *Occidental Chemical Corporation, et al. v. Honorable Eric Brown, Judge of the 28th District of Nueces County, Texas*, 877 S.W.2d 27, 30 (Ct. App. TX 13th Circuit 1994) (citing *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990). Because disqualification is a severe remedy, the courts must adhere to an exacting standard when considering motions to disqualify so as to discourage their uses as a dilatory tactic. *Id*. Thus, the burden is on the movant to establish with specificity a violation of one or more of the disciplinary rules, and mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard. *Id*.

Defendants assert that it must be presumed that Mr. Sheraw disclosed some or all of the privileged information to Plaintiffs' counsel; that Sheraw's knowledge of the hotel's strategies and impressions should be imputed to the plaintiffs' attorneys; that the Plaintiffs' attorneys knowingly engaged in conduct that raises serious doubt concerning the integrity of the legal

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 9 of 18

profession and these cases if Plaintiffs' counsel were to be permitted to continue their representation of the plaintiffs. Defendants claim that Plaintiffs' attorneys conduct was violative of the ABA Model Rules of Professional Conduct 1.7, 5.3(b) and (c)(1), and 8.4 and The Law Governing Lawyers (Third) §§ 11 and 15.[5] Rule 5.3 (b) and (c)(1) and Rule 8.4 [6] of the Model Rules of Professional Conduct are most applicable to the facts of these cases. Rule 5.3 imposes a

---

[5] ABA Model Rules of Professional Conduct: Rule 1.7 (Conflicts of Interest: Current Clients); Rule 5.3 (Responsibilities Regarding Nonlawyers Assistants; Rule 8.4 (Misconduct); The Law Governing Lawyers (Third) § 11( A Lawyer's Duty of Supervision) and The Law Governing Lawyers (Third) § 15 (A Lawyer's Duty to Prospective Client). The Court finds that Model Rule 5.3 and 8.4 applicable to this case. The Law Governing Lawyer § 11(b) and Model Rule 5.3 are essentially identical. Pursuant to the Virgin Islands Supreme Court Rule 205, X (D), the American Bar Association Model Rules of Professional Conduct is the applicable code of ethics for the Virgin Islands Bar Association.

[6] Rule 5.3 in pertinent part provides:
With respect to a nonlawyer employed or retained by or associated with a lawyer:
(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:
(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or
(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when it consequences can be avoided.

Rule 8.4 in pertinent part provides:
It is professional misconduct for a lawyer to:
(d) engage in conduct that is prejudicial to the administration of justice.

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 10 of 18

duty on a supervising attorney to ensure that nonlawyers conduct adheres to a lawyer's professional obligations. *Lamb v. Pralex Corporation*, 333 F. Supp.2d 361, 364 (D.V. I. 2004).

In this jurisdiction, where a nonlawyer employee has learned the confidences of an adversary, a rebuttable presumption arises that the nonlawyer employee will disclose the confidential information to the new employer. *Lamb v. Pralex Corporation*, at 365. Once the presumption arises, it must be rebutted by competent evidence that the nonlawyer employee has not shared any confidential evidence with the new firm. *Occidental Chemical Corporation, et al. v. Honorable Eric Brown, Judge of the 28th District of Nueces County, Texas*, 877 S.W.2d 27, 30 (Ct. App. TX 13th Circuit 1994). In this jurisdiction, the presumption that confidential client information has been used or disclosed may be rebutted by presenting evidence of an effective screening mechanism to shield the employee from those cases. See, *Lamb v. Pralex Corporation*, 333 F. Supp.2d 361, 365 (D.V.I. 2004). However, in circumstances where a screening mechanism is impractical, the uncontroverted affidavits of counsel have been accepted as competent evidence to rebut the presumption where the affidavits "clearly and effectively" demonstrate that no confidential information was communicated or is likely to be communicated. See, *Coburn v. Daimler Servs. N. Am.,* 289 F. Supp.2d 960, 964-965 (N.D. Ill. 2003). If the presumption is rebutted, the new firm should not be disqualified until the adverse party has presented some evidence that his confidences were in fact revealed or used against him by the nonlawyer employee. *Occidental Chemical Corporation* at 30.

Here, there is no dispute that Mr. Sheraw acquired privileged information regarding the

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 11 of 18

Blair Shannon's murder from the firm. Thus, the presumption arises that he has shared the information with Attorney Hart, or has used the information in his investigation for Attorney Hart. Here, because Mr. Sheraw is not an employee of Attorneys Hart and Feuerstein, but an independent contractor, a screening mechanism is not an option; thus, the Court will accept the affidavits of Attorney Hart and Sheraw as competent evidence to rebut the presumption. To rebut the presumption, Attorney Hart has offered a declaration declaring that in the spring of 2006, he asked Mr. Sheraw to conduct an investigation regarding the death of Blair Shannon and Mr. Sheraw advised him that he had been previously contacted, but not retained, by Moore Dodson and Russell to act as investigator for the Caribe Best Western Hotel [sic]. (Attorney Hart's Declaration, paragraph 2). Attorney Hart further declares that he confirmed that Mr. Sheraw was not retained by the firm, or the hotel and that Mr. Sheraw had not engaged in any investigation on behalf of Moore Dodson and Russell. (Attorney Hart's Declaration, paragraph 3). He further declares that in April 2006, he called the firm and left a message for Attorney Moore advising that he wanted to use Mr. Sheraw as an investigator and to confirm that Mr. Sheraw had not been retained by the firm and that he left the same message on May 24, 2006, but never heard from Attorney Moore or anyone else from the firm. (Attorney Hart's Declaration, paragraph 3). Attorney Hart further declares that he "now understands that Mr. Sheraw received documents from the firm and, to the best of his knowledge, Mr. Sheraw did not use the documents in the investigation he conducted for him." (Attorney Harts's Declaration, paragraph 5).

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 12 of 18

  Mr. Sheraw declares that on or about April 17, 2006, he was contacted by Attorney Hart with respect to the death of Blair Shannon at the Carib Beach Resort and was retained on April 20, 2006. (Mr. Sheraw's Declaration, paragraphs 19 and 21). Mr. Sheraw further declares that to initiate the investigation, he hired Kelvin Derricks on St. Thomas to: (a) attempt to obtain a police report relating to the murder; (b) identify the Virgin Islands Police Department officer heading the investigation and attempt to obtain background information about the murder, suspects, etc.; (c) identify any security guard company working at the hotel; and (d) determine if there were any security cameras at the hotel and, if so, determine who placed the security cameras there. (Mr. Sheraw's Declaration, paragraph 22). Mr. Sheraw further declares that Mr. Derricks performed the assigned tasks and identified the investigating officer as Roberto Lima, the security company as Ranger American, the victim's advocate as Leslie Webb and he confirmed that there were security cameras installed by Alert 1. (Mr. Sheraw's Declaration, paragraph 23). Mr. Sheraw further declares that based upon this information, he attempted to interview Officer Lima, Ms. Webb, the emergency medical technicians who responded to the scene and the medical examiner, but he was unable to do so because the individuals would not speak with him about the incident/investigation or would not return his calls. (Mr. Sheraw's Declaration, paragraph 24). Mr. Sheraw further declares that based on the information he obtained from Mr. Derricks, he contacted Delroy Richards, the president of Ranger American and made arrangements to interview him and the security guard supervisor, Michaela Skeet, on May 30, 2006. (Mr. Sheraw's Declaration, paragraph 24) He further declares that he also

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 13 of 18

spoke with Kevin Cogan, the president of Alert 1 and also arranged to interview him on May 30, 2006.  (Mr. Sheraw's Declaration, paragraph 24).  Mr. Sheraw further declares that he traveled to St. Thomas, Virgin Islands on May 30, 2006, and interviewed Delroy Richards, Kevin Cogan and Michaela Skeet.  (Mr. Sheraw's Declaration, paragraph 25).

Mr. Sheraw further declares that the investigative efforts he undertook for Attorney Hart were standard to investigations of this nature and that he did not deviate from his normal practice as a result of his communication with Attorney Russell and Attorney Moore, Dowson Holding or anyone acting on their behalf.  (Mr. Sheraw's Declaration, paragraph 27).  Mr. Sheraw further declares that the only aspect of the investigation that he was unable to conduct was the interviewing of the hotel employees.  (Mr. Sheraw's Declaration, paragraph 27).  He declares that the hotel manager referred him to the firm when he attempted to conduct their interviews.  (Mr. Sheraw's Declaration, paragraph 27).  Mr. Sheraw further declares that in connection with his investigation for Attorney Hart, he did not use any of the documents or information provided to him by the firm, Dowson Holding Company or anyone acting on their behalf.  (Mr. Sheraw's Declaration, paragraph 28)  Additionally, he declares that he has not disclosed, inadvertently or otherwise, any of the information, documents, or materials that were forwarded or communicated to him by the firm.  (Mr. Sheraw's Declaration, paragraph 30.)

This case is different from the typical situation where the nonlawyer employee has knowledge of confidential information relating to one or more cases of a former employer and is hired by a new firm that has those cases in an adversarial posture and may be effectively screened

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 14 of 18

from participation in those case or cases. Here, Mr. Sheraw was hired by Attorney Hart to work on the very case in which he had acquired attorney work-product documents. Nonetheless, the Court is satisfied from the affidavits of Attorney Hart and Mr. Sheraw that none of the confidences of the firm has been shared or used in Mr. Sheraw's investigation for Attorney Hart. The Court is comfortable in accepting the representations of Mr. Sheraw because he has been a private investigator in the Virgin Islands for a substantial number of years and the Court knows him to have conducted numerous investigations on behalf of attorneys in this jurisdiction and he enjoys a reputation as a professional and competent investigator. Accordingly, the Court believes that Mr. Sheraw would know that all information received by him from a potential client, whether or not that individual becomes a client, remains confidential.

  Further, the Court accepts the representation of Attorney Hart that he did not know of the existence of the documents until they became an issue in these cases and that the documents were never given to him by Mr. Sheraw. Based on the affidavits of Attorney Hart and Mr. Sheraw, the Court finds that Plaintiffs have effectively rebutted the presumption that Mr. Sheraw used the information in his investigation for Attorney Hart or that he disclosed the information to Attorney Hart.

  The Plaintiffs, having rebutted the presumption, the Court now examines the evidence before it to determine if Mr. Sheraw provided the documents to Attorney Hart or used information contained in the documents in his investigation for Attorney Hart. The Defendants have not presented any evidence to establish that Mr. Sheraw gave the documents to Attorney

Hart.  Attorney Hart has stated affirmatively that he did not know of the documents until this matter became an issue in these cases and that Mr. Sheraw has not given him the document.  Mr. Sheraw has declared that he has not given the documents to Attorney Hart.  Defendants claim that Mr. Sheraw used the information in his investigation for the Plaintiffs and point to the statement of Delroy Richard prepared by Mr. Sheraw.  Defendants submitted an affidavit of Delroy Richards wherein he avers that he did not provide some of the information Mr. Sheraw included in the summary of his interview with Mr. Richards.  Thus, the Defendants conclude that the alleged additional information was obtained from the documents Moore Dodson and Russell provided to Mr. Sheraw.  The Court reviewed, *in camera*, the documents that Moore Dodson & Russell provided to Mr. Sheraw and has determined that information that Mr. Richards avers that he did not provide to Mr. Sheraw was not contained in the documents that the firm sent to Mr. Sheraw.

Additionally, Defendants indicated that because Mr. Sheraw had access to the firm's documents, "there is no way to know what Sheraw retained in his memory and interjected into his work product provided to the Plaintiffs."  This is a legitimate concern.  However, based on the Court's *in camera* review of the documents sent to Mr. Sheraw and based on Mr. Sheraw's description of how he conducted his investigation for Plaintiffs, the Court is satisfied that Mr. Sheraw conducted a comprehensive, independent investigation and whatever role, if any, Mr. Sheraw's review of those documents may have had in his investigation is negligible.  Further, the Court notes that the documents received from the firm do not provide sufficient detail or clarity

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 16 of 18

of information such that would present a concern to the Court.

Finally, Defendants contend that "there is no way to know what privileged information Sheraw, directly or indirectly, passed on to Plaintiff's [sic] lawyers" and submits an affidavit of Attorney Russell wherein he avers that he discussed "Dowson's legal defense and defense strategy and issues in some detail" with Mr. Sheraw. Mr. Sheraw acknowledges having two telephone conversations with Attorney Russell. He recalls the first telephone call as an inquiry of whether he would be willing to conduct an investigation regarding the murder of Blair Shannon, a request for a scope of work and cost estimate for his services. He recalls the second telephone call with Attorney Russell as a request for a revised scope of work and price quotation. He does not mention whether there were any discussions regarding Defendants' counsel's defense strategy of the case. Mr. Sheraw does, however, declare that he has not disclosed, either inadvertently or otherwise, any of the information provided to him or communicated to him by Attorney Moore, Russell, their law firm, or Dowson Holding Company.

The Court finds that even to the extent that Attorney Russell discussed the defense's legal strategies with Mr. Sheraw, Mr. Sheraw has declared that he has not disclosed any information received from the firm with Attorney Hart. The Court notes that these discussions would have taken place at the stage where the parties were exploring establishing a contractual relationship. Thus, the Court finds it unlikely, in the absence of a contractual relationship and a pending lawsuit, that the discussions would have been such that would encompass specific defense strategies and issues as opposes to general concerns and issues regarding the Defendants defense

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 17 of 18

of the case.  As the Court indicated above,  Mr. Sheraw enjoys a reputation of professionalism and competency in the legal community.  The Court is satisfied based upon Mr. Sheraw's experience as an investigator and upon his and Attorney Hart's declarations that any confidences that Mr. Sheraw may have learned from the firm have not been disclosed to Attorneys Hart and Feuerstein.  The Court finds that Defendants have not established, through neither the affidavit of Mr. Delroy Richards nor the evidence before the Court, that Mr. Sheraw revealed any of the confidences he may have received from the firm or that he used any of the information in his investigation for the Plaintiffs.

It would have been better professional practice for Attorney Hart to have written a letter to Moore Dodson and Russell, or to have spoken directly with an attorney at the firm about his intention to hire Mr. Sheraw to determine the extent of Mr. Sheraw's association with the firm.  Attorney Hart's failure to do so and  his subsequent retention of Mr. Sheraw as Plaintiffs' investigator do not amount to conduct that is prejudicial to the administration of justice.  The Court is mindful that this is a small community and that the number of private investigators is limited.  Mr. Sheraw was not retained by the firm and did not conduct any investigation at all for the Defendants.  Mr. Sheraw's association with the Defendants is limited to his current possession of work-product documents, documents that the firm failed to request return of until December 2008.  The Court finds that to disqualify  Plaintiffs' counsel and to deprive the Plaintiffs of their chosen counsel would be an unduly harsh remedy and not justified by the facts of these cases.  The Court finds that Defendants have failed to establish with specificity any

Hamilton & Faulkner v. Dowson Holding
Company, Inc., et al
Civ. Nos. 2008-02 & 2008-10
Memorandum and Order
Page 18 of 18

violation of the above cited rules of professional conduct.

      For the foregoing reasons, Defendants' Motion to Disqualify Plaintiffs' counsel is

**DENIED**.

**DATED**: July 2, 2009                        S\_____
                                                  **GEOFFREY W. BARNARD**
                                                  U. S. Magistrate Judge

**ATTEST:**
**WILFREDO F. MORALES**
Clerk of Court